1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MULTIFAB, INC.,

                    Plaintiff,

        v.

JON ZWEIGER, et al.,

                    Defendants.

CASE NO. C19-6164 BHS

ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS

11      This matter comes before the Court on Defendant Jon Zweiger's ("Zweiger")

12  motion to dismiss for failure to state a claim. Dkt. 30. The Court has considered the

13  pleadings filed in support of and in opposition to the motion and the remainder of the file

14  and hereby grants the motion for the reasons stated herein.

15                      **I.   PROCEDURAL HISTORY**

16      On December 4, 2019, Plaintiff Multifab, Inc. ("Multifab") filed a redacted

17  complaint for misappropriation of trade secrets with numerous supporting exhibits, Dkts.

18  1–1-11, along with a redacted motion for temporary restraining order ("TRO"), Dkt. 2, and

19  a motion to seal, Dkt. 4. On December 5, 2019, Multifab filed allegedly unredacted

20  versions of the complaint, motion for TRO, and supporting documents ex parte and under

21  seal. Dkts. 7–9. Multifab alleges misappropriation of trade secrets under 18 U.S.C. §§

22  1832, 1836, misappropriation of trade secrets under the Washington Uniform Trade

1   Secrets Act ("WUTSA"), RCW Chapter 19.108, and violation of Washington's Unfair

2   Business Practices – Consumer Protection Act ("CPA"), RCW Chapter 19.86. Dkt. 1.

3          On December 6, 2019, Multifab and Defendants William Sturgill ("Sturgill") and

4   PEI Manufacturing, LLC ("PEI") filed a stipulated motion to withdraw the motion for

5   TRO against Sturgill and PEI. Dkt. 16. On December 9, 2019, the Court granted the

6   motion. Dkt. 17.

7          On December 10, 2019, Multifab and Zweiger filed a stipulated motion to

8   withdraw the TRO against Zweiger. Dkt. 21. On December 11, 2019, the Court granted

9   the motion. Dkt. 23.

10         On January 21, 2020, Zweiger filed the instant motion to dismiss for failure to

11  state a claim. Dkt. 30. On January 31, 2020, Multifab responded. Dkt. 31. On February 5,

12  2020, Zweiger replied. Dkt. 33

13         On February 25, 2020, the Court granted Multifab's motion to seal. Dkt. 34.

14  Though the Court noted that Multifab's argument that a single customer name could be a

15  trade secret was "suspect and unsupported by any binding authority directly on point,"

16  the Court declined to resolve the issue on the unopposed motion to seal, reserving

17  resolution for a subsequent dispositive motion.

## II.   FACTUAL BACKGROUND

19         The Court sets out the facts as alleged in Multifab's complaint. Dkt. 1.

20         In 2008, Multifab hired Zweiger as an outside salesman in its packaging division.

21  *Id.*, ¶¶ 2.2–2.3. Zweiger signed a Confidentiality and Non-Disclosure Agreement as part

22  of the hiring process. *Id.* ¶ 2.3.1.

ORDER - 2

Zweiger's work involved trade secret account information relating Multifab's customers, including a customer identified as O***S***Company, and trade secret account information relating to suppliers, including PEI. *Id.* ⊉ 2.4.3–2.4.4. Multifab maintains trade secret information in a confidential storage environment with controlled access including password protection, limited to employees who need access to carry out their job requirements. *Id.* ⊉⊉ 2.14, 2.16, 2.17–2.17.1.

Sturgill was a Governor of PEI, and Zweiger and Sturgill were friends and business associates. *Id.* ⊉⊉ 2.6–2.7, 2.48.1. Zweiger negotiated prices and purchased goods for Multifab through Sturgill from PEI. *Id.* ⊉ 2.28.

O***S***Company was a long-term Multifab customer. *Id.* ⊉ 2.12. Zweiger was assigned to the O***S***Company account on August 19, 2015. *Id.* ⊉ 2.37. Between 2017 and 2019, O***S***Company purchased consumer-sized spice containers from Multifab. *Id.* ⊉⊉ 2.12.2–2.12.4, 2.38.1. Multifab bought the spice containers from PEI and sold them to O***S***Company. *Id.* ⊉⊉ 2.34, 2.39–2.40. Multifab alleges that Sturgill "knew at all times material that [Multifab] had a business relationship with O***S***Company for the purchase and sale of said consumer goods." *Id.* ⊉ 2.49.

Multifab alleges that Zweiger and Sturgill conspired to allow PEI to sell directly to O***S***Company and "as a result of the disclosure of [Multifab's] trade secrets by Defendant Zweiger, Defendant PEI became aware of the sales price of said goods to O***S***Company" and charged O***S***Company about the same price. *Id.* ⊉⊉ 2.31–2.32, 2.35. Multifab alleges that O***S***Company's customer contact list, price, and related information for the goods O***S***Company purchased are trade secrets. *Id.* ⊉⊉

1  2.22.1–2.22.2. Multifab also alleges that O***S***Company required a large volume of

2  goods, and PEI's financial capacity to supply that large volume allowed PEI to

3  successfully divert sales. *Id.* ¶¶ 2.36–2.36.1.

4        On May 17, 2018, Zwieger signed a Multifab Acceptable Use Policy. *Id.* ¶ 2.3.2.

5  In August 2018, Zwieger told Multifab that O***S***Company was going to purchase

6  spice containers directly from a third company. *Id.* ¶ 2.42. However, Multifab alleges that

7  it continued to order spice containers from PEI and sell them to O***S***Company at a

8  profit into 2019. *Id.* ¶ 2.43.

9        On November 19, 2019, Multifab discovered that Zweiger had a PEI email

10  address. *Id.* ¶ 2.18.1. It reviewed Zweiger's Multifab email account and found a June 25,

11  2019 email from O***S***Company requesting assurances that a supply of spice

12  containers could be secured through June 2020. *Id.* ¶¶ 2.25.2, 2.45.2. It also found

13  purchase orders dated September 20, 2019 for the sale of spice containers directly from

14  PEI to O***S***Company. *Id.* ¶¶ 2.24.1, 2.45.1. Sturgill was copied on several emails.

15  *Id.* ¶ 2.45.2.

16        On November 25, 2019, Timothy Smith ("Smith"), President of Multifab, asked

17  Zwieger whether he had a PEI email address or was employed by PEI, which Zweiger

18  denied. *Id.* ¶¶ 2.46–2.46.2. Zwieger told Smith that O***S***Company was purchasing

19  spice containers from the third company, not from PEI. *Id.* ¶ 2.46.3.

20        On December 2, 2019, Multifab fired Zweiger. *Id.* ¶ 2.5. Multifab alleges that it is

21  reviewing Zeiger's customer and vendor accounts for evidence of misappropriation

22  related to other customers or vendors. *Id.* ¶¶ 2.25, 2.47.

1

## III.  DISCUSSION

2

**A.      Standard on a Motion to Dismiss for Failure to State a Claim**

3
4
5
6
7
8
9
10
11
12

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

13
14
15
16
17

While ordinarily a court may look only at the face of the complaint to decide a motion to dismiss, the doctrine of "incorporation by reference" permits consideration of documents referenced extensively in the complaint and accepted by all parties as authentic without converting the Rule 12(b)(6) motion into one for summary judgment. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

18

**B.      Analysis**

19
20
21

Zweiger argues that Multifab has (1) failed to plead sufficient facts to show a protectable trade secret exists, (2) failed to plausibly allege he delivered any trade secret to PEI, and (3) failed to state a claim under the CPA.

22

1              **1.      Identifying a Trade Secret**

2          "A plaintiff seeking to establish a trade secrets claim under the uniform act has the

3    burden of proving that legally protectable secrets exist." *Boeing Co. v. Sierracin Corp.*,

4    108 Wn.2d 38, 49–50 (1987) (en banc) (citing *Electro-Craft Corp. v. Controlled Motion,*

5    *Inc.*, 332 N.W. 2d 890, 898 (Minn. 1983)). "For trade secrets to exist, they must not be

6    'readily ascertainable by proper means' from some other source, including the product

7    itself." *Id.* (quoting RCW 19.108.010(4)(a); citing *Chicago Lock Co. v. Fanberg*, 676

8    F.2d 400, 404 (9th Cir. 1982)). A trade secret must also "derive[] independent economic

9    value, actual or potential, from not being generally known to . . . other persons who can

10   obtain economic value from its disclosure or use" and be "the subject of efforts that are

11   reasonable under the circumstances to maintain its secrecy." RCW 19.108.010(4). The

12   federal Defend Trade Secrets Act ("DTSA") defines trade secret similarly. *Phillips N.*

13   *Am., LLC v. Summit Imaging Inc.*, No. C19-1745JLR, 2020 WL 1515624, at *5 (W.D.

14   Wash. March 30, 2020) (citing 18 U.S.C. § 1839(3); *MUFG Union Bank, N.A. v. Tyler*,

15   No. C17-1766RSM, 2018 WL 2046290, at *3 (W.D. Wash. May 2, 2018)).

16         "A trade secrets plaintiff need not prove that every element of an information

17   compilation is unavailable elsewhere." *Boeing*, 108 Wn.2d at 51 (citing *Hayes-Albion*

18   *Corp. v. Kuberski*, 364 N.W.2d 609 (Mich. 1984)). "Such a burden would be

19   insurmountable since trade secrets frequently contain elements that by themselves may be

20   in the public domain but together qualify as trade secrets." *Id.* (citing *Servo Corp. of Am.*

21   *v. Gen. Elec. Co.*, 393 F.2d 551 (4th Cir. 1968)). "Although the existence of a

22   confidentiality agreement does not make information shared pursuant to it a trade secret,

1    the existence of such an agreement is relevant to whether a party took reasonable steps to

2    ensure secrecy of its alleged trade secrets." *Yeiser Research & Dev. LLC v. Teknor Apex*

3    *Co.*, 281 F. Supp. 3d 1021, 1045 (S.D. Cal. 2017) (citing *MAI Sys. Corp.*, 991 F.2d at

4    521; *Vesta Corp. v. Amdocs Mgmt., Ltd.*, 80 F. Supp. 3d 1152, 1166 (D. Or. 2015)).

5         "While the definition of a trade secret is a matter of law under the Uniform Trade

6    Secrets Act, RCW 19.108.010(4), the determination in a given case whether specific

7    information is a trade secret is a factual question." *Ed Nowogroski Ins., Inc. v. Rucker*,

8    137 Wn. 2d 427, 436 (1999) (en banc) (citations omitted). Whether a particular type or

9    format of information is protected "is a question of law dependent on interpretation of the

10   statute." *Id*. The Uniform Trade Secrets Act ("UTSA") has been widely adopted by states

11   including Washington. *Ed Nowogroski*, 137 Wn. 2d at 438. As the WUSTA "shall be

12   applied and construed to effectuate its general purpose to make uniform the law with

13   respect to the subject of this chapter among states enacting it," RCW 19.108.910,

14   interpretation of the UTSA from other jurisdictions is persuasive authority. *See Yeiser*,

15   281 F. Supp. 3d at 1044.

16        First, the Court considers the issue of what allegations are at issue in this motion.

17   Multifab emphasizes that "because it is the defendant who knows what it

18   misappropriated, a plaintiff should not be required to plead with specificity all of its

19   possible trade secrets in order to proceed with discovery." Dkt. 31 at 4 (quoting *Yeiser*,

20   281 F. Supp. 3d at 1044). Multifab is correct, but "[o]n the other hand, 'courts generally

21   require sufficient pleading such that the other party is on notice of what it is alleged to

22   have misappropriated.'" *Yeiser*, 281 F. Supp. 3d at 1044 (quoting *Blue Earth Biofuels*,

1   *LLC v. Hawaiian Elec. Co., Inc.*, 780 F. Supp. 2d 1061, 1078 (D. Haw. 2011)).

2   Considering the allegations in the complaint, the Court agrees with Zweiger that the only

3   allegations sufficiently specific to put Zweiger on notice are that he shared Multifab's

4   trade secret information to facilitate a deal between O***S***Company and PEI. *See*

5   Dkt. 30 at 2–3; Dkt. 33 at 5. Allegations referencing the misappropriation of other

6   customers' information are too vague to put Zweiger on notice of specific

7   misappropriation.

8          Second, the Court considers whether Multifab has pled sufficient facts to identify

9   a trade secret Zweiger allegedly disclosed. The complaint alleges that Sturgill "knew at

10  all times material that [Multifab] had a business relationship with O***S***Company for

11  the purchase and sale of said consumer goods." Dkt. 1, ¶ 2.49. Zweiger argues that the

12  complaint thus fails to allege that O***S***Company's identity was a trade secret and

13  argues that the identity "was admittedly already known to PEI without any

14  misappropriation by Zweiger." Dkt. 30 at 3–4.

15         In its response, Multifab argues that it expended time and money "to establish a

16  relationship with O***S***Company that included knowledge of pricing, buying needs,

17  contacts, and all other customer information." Dkt. 31 at 9 (citing *Ikon Office Solutions,*

18  *Inc. v. Rezente*, No. 2:10–1704 WBS KJM, 2010 WL 5129293, at *2–3 (E.D. Cal. 2010)).

19  Multifab argues that it has redacted O***S***Company's name because keeping the

20  name secret might "discourage a business competitor from investing the resources to

21  learn this customer's name and other information." *Id*. at 11 (citing *Extreme Reach, Inc.*

22  *v. Spotgenie Partners, LLC*, No. 13-07563-DMG (JCGx), 2013 WL 12081182, at *4–5

1   (C.D. Cal. Nov. 22, 2013) ("*Extreme Reach*")). Multifab further argues that "whether a

2   customer list, whether a single name or the entire list of customers can be deemed a trade

3   secret depends upon evidence of independent economic value and the steps taken by

4   [Multifab] to prevent the disclosure of said confidential information." *Id*. It also

5   emphasizes that Zweiger's use of a PEI email address and possession of direct purchase

6   orders between O\*\*\*S\*\*\*Company and PEI are evidence of Zweiger's misappropriation.

7   Dkt. 31 at 15 (citing Dkt. 1, ¶¶ 2.18, 2.44–2.45.2). However, Multifab's response does

8   not clearly contradict Zweiger's argument that PEI was independently aware of

9   O\*\*\*S\*\*\*Company's identity.

10      It is undisputed that a customer list may qualify as a trade secret. The Ninth

11   Circuit explains that in identifying a trade secret, "[t]he most important consideration is

12   whether the information is readily accessible to a reasonable diligent competitor."

13   *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1332 (9th Cir. 1980).

14   "Where customer lists are involved, the fact of ready accessibility is often inferred from

15   evidence concerning whether the information is available in public directories such as

16   telephone directories or more specialized trade directories." *Id*. (citations omitted).

17   "Evidence concerning whether a reasonably diligent salesman could perceive a narrowing

18   classification which reduces substantially the costs of identifying potential customers is

19   thus relevant to determining accessibility." *Id*.

20      Zweiger argues that the identity of a single customer cannot be a trade secret. Dkt.

21   30 at 3 (citing *Precision Indus. Equip. v. IPC Eagle*, No. 14-3222, 2016 WL 192601

22   (E.D. Pa. Jan 14, 2016) ("*Precision Industrial*") (citing *SI Handling Sys., Inc. v. Heisley*,

1    753 F.2d 1244, 1258 (3d Cir. 1985)); *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d

2    617 (E.D. Pa. 2014) ("*Synthes*"). In *Precision Industrial*, the district court found that the

3    identity of a customer and its buying habits was unlike a customer list and could not be a

4    trade secret where the customer was a large, well-known company that actively solicited

5    sales proposals from suppliers. *Precision Industrial*, 2016 WL 192601, at *7–8. In

6    *Synthes*, the defendant argued that information was not a trade secret because it was

7    available from other sources. *Synthes*, 25 F. Supp. 3d at 706. The court found the

8    defendant's argument rested on the mischaracterization of the information as relating to a

9    single product, vendor, or customer when it was actually a "compilation, categorization,

10    and organization of information on thousands of customers and products, which could not

11    be easily recreated by a competitor's mere talking with the customers." *Synthes*, 25 F.

12    Supp. 3d at 707 (internal quotation marks omitted).

13        In opposition, Multifab quotes *Extreme Reach* for the proposition that its effort in

14    acquiring and retaining customers can be a trade secret and for the proposition that its

15    rates and customers' business histories "are necessarily information that only Extreme

16    Reach, and not a competitor, could have gathered." Dkt. 31 at 2–3 (quoting *Extreme*

17    *Reach*, 2013 WL 12081182, at *4). However, the protected information at issue in

18    *Extreme Reach* was a customer list with a substantial number of entries. *Extreme Reach*,

19    2013 WL 12081182, at *4. Multifab's other authorities similarly address customer lists

20    rather than single customer profiles. *See, e.g.*, *Ikon*, 2010 WL 5129293, at *2–3

21    (customer list with minimum of a few hundred entries); *Chartwell Staffing Servs. Inc. v.*

22    *Atlantic Solutions Grp. Inc.*, No. 8:19-cv-00642-JLS-JDE, 2019 WL 2177262, at *7

1  (C.D. Cal. May 20, 2019), *appeal filed*, No. 19-55614 (9th Cir.) (information compilation

2  containing all of plaintiff's customers and their billing rates, key contacts, specialized

3  requirements, and mark up rates was protectable trade secret).

4         Considering these authorities, the Court finds that if a supplier possesses the

5  identity of a *single* end-purchaser of the goods that supplier is currently selling to a

6  distributor, other information about that specific end-purchaser's needs becomes "'readily

7  ascertainable by proper means.'" *Boeing Co.*, 108 Wn.2d at 49–50 (quoting RCW

8  19.108.010(4)(a)). In other words, knowing "at all times material that [Multifab] had a

9  business relationship with O***S***Company for the purchase and sale of" the goods

10  PEI supplied to Multifab, Dkt. 1 ¶ 2.49, PEI's "reasonably diligent salesman" could

11  readily ascertain the utility of asking O***S***Company whether it would be interested

12  in buying those goods directly from PEI, *Hollingsworth*, 622 F.2d at 1332. While

13  Zweiger was allegedly party to agreements not to disclose Multifab's information,

14  Zweiger's commitments would in no way prevent PEI from asking O***S***Company

15  directly about its buying needs, volume demands, current price paid, or other information.

16  The Court thus concludes that Multifab fails to plead sufficient facts to identify a trade

17  secret. *Balistreri*, 901 F.2d at 699. Finding no trade secret based on the facts alleged, the

18  issue of misappropriation of a trade secret is moot.[1] Therefore, the Court grants

19

20

21        [1] Whether Zweiger in fact shared information with PEI is beyond the scope of this inquiry because Multifab has failed to adequately allege that PEI had no prior knowledge that

22  O***S***Company bought PEI products from the distributor Multifab.

1  Zweiger's motion to dismiss Multifab's misappropriation claims under the DTSA and

2  WUTSA.

3      **2.    CPA**

4      A CPA claim has five elements as follows: "(1) an unfair or deceptive act or

5  practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to

6  a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*,

7  166 Wn.2d 27, 37 (2009) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*,

8  105 Wn.2d 778, 784 (1986)).

9      Zweiger argues that Multifab's CPA claim (1) fails to allege sufficient facts to

10 satisfy the public interest element and (2) is preempted. Dkt. 30 at 5–7. As Multifab's

11 CPA claim is premised on the misappropriation of its trade secrets as the unfair and

12 deceptive trade practice, Dkt. 1 ¶ 5.5 and the Court grants leave to amend, the Court

13 declines to resolve this issue on the current pleadings.

14 **C.    Leave to Amend**

15     In the event the court finds that dismissal is warranted, the court should grant the

16 plaintiff leave to amend unless amendment would be futile. *Eminence Capital, LLC v.*

17 *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). For the purposes of a motion to

18 amend, it must be "beyond doubt" that amendment is futile as a matter of law. *See DCD*

19 *Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987).

20     Multifab argues that "[s]ince the date of filing the Verified Complaint additional

21 facts have come to light that support the original allegations" and that the complaint "no

22 longer reflects the original . . . causes of action." Dkt. 31 at 19. Zweiger argues that

1  "[t]here is no amendment that could cure the trade secret assertion with respect to the

2  asserted customer and transaction at issue" when considering the allegations in the

3  original complaint. Dkt. 33 at 9. Zweiger also argues there is no way Multifab can allege

4  a private trade secret dispute satisfies the public interest element of a CPA claim. *Id*. As

5  the Court finds Zweiger has not established beyond doubt that amendment would be

6  futile as a matter of law, the Court grants leave to amend. *DCD Programs*, 833 F.2d at

7  188; *see also Wizards of the Coast, LLC v. Cryptozoic Entm't, LLC*, 309 F.R.D. 645, 649

8  (W.D. Wash. 2015) (burden is on opposing party to show amendment is not warranted).

9  ### IV.  ORDER

10     Therefore, it is hereby **ORDERED** that Zweiger's motion to dismiss, Dkt. 30, is

11  **GRANTED**. The complaint is **DISMISSED without prejudice** and with leave to

12  amend. Multifab may file an amended complaint no later than June 5, 2020. Failure to

13  file to file an amended complaint or otherwise respond will result in dismissal with

14  prejudice.

15     Dated this 22nd day of May, 2020.

16

17

18  BENJAMIN H. SETTLE
   United States District Judge

19

20

21

22

ORDER - 13